**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

KARINA HODGE,

              Plaintiff,

     vs.                                      No.  1:20-cv-01212-WJ-JHR

JEFFREY BARTRAM, MANUEL
GONZALES III in his individual capacity,
BOARD OF COUNTY COMMISSIONERS
FOR THE COUNTY OF BERNALILLO,

              Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ON THE BASIS OF QUALIFIED IMMUNITY**

THIS MATTER comes before the Court upon Defendants Jeffrey Bartram, Manuel Gonzales III, and the Board of County Commissioners for the County of Bernalillo's (collectively, the "Defendants") Motion for Summary Judgment on the Basis of Qualified Immunity. Plaintiff Karina Hodge ("Ms. Hodge") responded, and this matter is now ripe for ruling. *See* Doc. 36 (Response); Doc. 46 (Reply); and Doc. 48 (Notice of Briefing Complete).  The Court finds that the Motion is well-taken in its request for dismissal of Claims I (unlawful seizure), III (First Amendment), IV (false/arrest imprisonment), V (First Amendment and Fourth Amendment unlawful seizure), and VI (false arrest/imprisonment) and, therefore, it is GRANTED IN PART. The Court finds that the Motion is not well-taken in its request for dismissal of Claims II (excessive force), IV (battery), V (Fourth Amendment excessive force), and VI (battery) and, therefore, it is DENIED IN PART.

## BACKGROUND

### I.    Undisputed Material Facts[1]

Just after midnight on October 20, 2018, Ms. Hodge left a restaurant located in a shopping center at Spain Road and Eubank Boulevard in Albuquerque, New Mexico. DMF ¶ 6. As she was leaving the shopping center's parking lot, Ms. Hodge turned northbound on Eubank. PSF ¶ 79P. The Parties dispute whether Ms. Hodge failed to stop at a posted stop sign before making her turn, but it is undisputed that Bernalillo County Sheriff's Office ("BCSO") Deputy Jeffrey Bartram ("Deputy Bartram") began following Ms. Hodge as she continued driving north on Eubank. DMF ¶ 7, PSF ¶ 79Q. That night, Deputy Bartram was working as patrol for the Field Services Division of BCSO and was assigned to the DUI unit. DMF ¶ 1. Deputy Bartram was wearing his uniform which consisted of green pants and a tan shirt with a badge and two shoulder patches indicating his status as a BCSO officer. *Id.* ¶¶ 2–3. Deputy Bartram was driving a black Ford Explorer with decals on either side reading "Sheriff's Department." *Id.* ¶ 4.[2] The vehicle was also equipped with red and blue emergency lights integrated into the windshield and front bumper. DMF ¶ 5, PSF ¶ 5a.

As Deputy Bartram followed Ms. Hodge, she allegedly crossed a yellow line on the left side of the road. Whether any traffic infractions occurred that night is vigorously disputed. The parties do agree that, at this point, Deputy Bartram engaged his emergency lights and initiated a traffic stop. DMF ¶ 9. Ms. Hodge pulled over into a parking lot, and Deputy Bartram approached her vehicle on the passenger side. *Id.* 10–11, PSF ¶ 79R. Deputy Bartram stated, "Hello, how are

---

[1]    These facts are taken from the Parties' briefs and are supported by evidence in the record as stated by the Parties.  The Court cites to the Defendants' Undisputed Material Facts ("DMF") and Plaintiff's Statement of Material Facts ("PSF"). References to the supporting exhibits are omitted in this section.

[2]    The type of decals affixed to Deputy Bartram's vehicle are known as "ghost graphics." PSF ¶ 4a. These decals are similar to holographic images and are most visible during the day. *Id.* At night, the decals are visible only when light is shined on them. *Id.*

you? Do you have a driver's license on you?" DMF ¶ 12. Ms. Hodge answered by stating, "Yes, and are you asking or demanding for it?" *Id.* ¶ 14. Deputy Bartram responded, "Yes, may I see it please?" *Id.* ¶ 16. Ms. Hodge stated, "You are? You do know it's illegal to demand something? Why did you stop me?" *Id.* ¶ 17. Deputy Bartram asked again, "May I see your driver's license please?" *Id.* ¶ 18. Ms. Hodge asked again, "Why did you stop me?" *Id.* ¶ 19. Deputy Bartram then stated to Ms. Hodge, "When you pulled onto Eubank, you didn't come to a complete stop and then as you were driving on Eubank. . . you failed to maintain your lane of traffic." *Id.* ¶ 20.  Plaintiff responded by stating "You're lying." *Id.* ¶ 21. Deputy Bartram again asked for Plaintiff's driver's license, and instead of complying with his request, she stated "No you can't, and I'm calling 911." *Id.* ¶¶ 24–23. Defendants do not contest Ms. Hodge's assertion that she felt uncomfortable being alone with Deputy Bartram. PSF ¶ 23b.

At this point, Deputy Bartram called for backup. DMF ¶ 24. He then walked around to the driver's side of Ms. Hodge's vehicle and attempted to ask her several questions. *Id.* ¶¶25–26. Ms. Hodge did not answer Deputy Bartram's questions, but claims that this was due to fact that she was calling 911 to report Deputy Bartram's behavior to a dispatcher. Deputy Bartram asked Ms. Hodge twice more to provide her driver's license and then stated, "I am demanding that you give me your ID." *Id.* ¶¶ 27–28. Ms. Hodge responded, "That is an unlawful order." *Id.* ¶ 29. Deputy Bartram retorted, "No, it's a lawful order ma'am" and explained to Ms. Hodge, "My name is Deputy Bartram, I work with the Bernalillo County Sheriff's Office." *Id.* ¶¶ 30–31. Ms. Hodge does not dispute the Deputy Bartram made these statements, but she argues that she was unable to hear them because she was distracted by her ongoing conversation with the 911 dispatcher. Deputy Bartram once again requested Ms. Hodge's driver's license, but she ignored this request and continued to speak into her cell phone. *Id.* ¶¶ 32–33.

Deputy Bartram decided to remove Ms. Hodge from her vehicle because he was concerned that she was impaired by alcohol.[3] *Id.* ¶¶ 36–37. Deputy Bartram stated, "This is the Bernalillo County Sheriff's Department, ma'am" and again asked to see Ms. Hodge's driver's license. *Id.* ¶ 39. Deputy Bartram then opened Ms. Hodge's door as she continued to speak with the 911 dispatcher on her cell phone, telling the dispatcher that an officer was being hostile and had just opened her car door. *Id.* ¶¶ 40–41, PSF ¶¶ 41a–41b. Deputy Bartram instructed Ms. Hodge to "step out of the vehicle." DMF ¶ 42. Ms. Hodge made no movement to step out of the vehicle and remained on her cell phone. *Id.* ¶ 43. Deputy Bartram again asked Ms. Hodge, still on her cell phone, to step out of the vehicle and again stated he worked for BCSO. *Id.* ¶ 44. Deputy Bartram then stated, "I am demanding you give me your driver's license. . . this is a lawful order." *Id.* ¶¶ 45–46. Deputy Bartram gave Ms. Hodge six additional commands to exit her vehicle. *Id.* ¶ 47. He then attempted to look in the vehicle to determine whether there were any weapons near Ms. Hodge and to ascertain where her keys were located. *Id.* ¶ 49. Deputy Bartram leaned into the vehicle and grabbed Ms. Hodge's wrists. *Id.* ¶¶ 50–51. In response to this, Ms. Hodge stated, "You better stop it buddy." *Id.* ¶ 52. She immediately leaned away from Deputy Bartram and pulled her arms away. *Id.* ¶ 53. Deputy Bartram again asked Ms. Hodge to step out of the vehicle. *Id.* ¶ 54. Ms. Hodge has testified that she was afraid to leave her vehicle. PSF ¶ 54a. Deputy Bartram again informed Ms. Hodge that he was giving her a lawful order. DMF ¶ 55. Ms. Hodge responded by stating to Deputy Bartram that his actions were illegal. PSF ¶ 55a.

Deputy Bartram holstered his flashlight and attempted to remove Ms. Hodge from the vehicle. DMF ¶ 56. Ms. Hodge pulled away from Deputy Bartram, who continued to ask Ms.

---

[3]     It is undisputed that, just prior to this encounter, Ms. Hodge had been at the Barley Room where she consumed approximately one and a half servings of beer over the course of several hours. PSF ¶ 79D–79N. However, other details of the traffic stop, specifically Ms. Hodge slurring her words or having bloodshot eyes, are highly disputed.

Hodge to step out of the vehicle. *Id.* ¶ 57–58. Ms. Hodge restrained herself to prevent Deputy Bartram from taking her out of the vehicle. *Id.* ¶ 59. Deputy Bartram was able to remove Ms. Hodge from the vehicle and she ultimately ended up on the ground. *Id.* ¶ 60 Once on the ground, Ms. Hodge curled up with her knees towards her chest and she kept "squirming" around to get into a different position while on the ground. *Id.* ¶ 61. Ms. Hodge was still attempting to communicate with the 911 dispatcher at this point. PSF ¶ 61b.

Deputy Bartram was able to gain control of Ms. Hodge's left hand, but her right hand was underneath her body. DMF ¶ 64. While Deputy Bartram was attempting to gain control of Ms. Hodge's right hand, Deputy Bartram spun Ms. Hodge around on her side and she landed with her right arm under her body. *Id.* ¶ 65–66. Deputy Bartram sat on top of Ms. Hodge to push her legs straight so he could handcuff her. *Id.* ¶ 67. He used a pain compliance hold to push Ms. Hodge's hands together to place her in handcuffs. *Id.* ¶ 69. Ms. Hodge sustained injury and lacerations to her right knee and elbow. PSF ¶ 79AA. She also sustained injuries to her neck and shoulders. *Id.* ¶ 79BB.

At the time of the traffic stop, Ms. Hodge was 59 years old and 5'1" in height, weighing approximately 120 pounds; in other words, her stature and weight was significantly less than the stature and weight of Deputy Bartram. *Id.* ¶ 79A–79C. One minute and twenty-one seconds passed between when Deputy Bartram made his first contact with Ms. Hodge and when he first asked her to step out of the vehicle. Then fifty-six seconds passed between when Deputy Bartram first asked Ms. Hodge to step out of the vehicle and when he began to pull Ms. Hodge out of the vehicle. Thus, the entire encounter, from the first contact to Deputy Bartram placing Ms. Hodge in handcuffs, lasted three minutes and forty-six seconds. *Id.* ¶ 79DD–79FF.

As a result of this encounter, Ms. Hodge was charged with: aggravated DUI; failure to maintain lane; failure to stop from a private drive; concealing ID; and resisting, evading, and obstructing an officer. DMF ¶ 71. During the proceedings in her criminal case, Ms. Hodge filed a Motion to Suppress for Lack of Reasonable Suspicion and Probable Cause, which argued that Deputy Bartram did not have reasonable suspicion to stop her vehicle and did not have probable cause to arrest her. *Id.* ¶ 72–74; *see also* Doc. 36 at 19 & Doc. 46 at 9. On May 20, 2019, the Bernalillo County Metropolitan Court held a hearing on Ms. Hodge's motion to suppress. *Id.* ¶ 75. Ms. Hodge was represented by counsel. *Id.* ¶ 76. At the conclusion of the hearing, the Metropolitan Court found there was both reasonable suspicion to support the traffic stop as well as probable cause to support Ms. Hodge's arrest. *Id.* ¶ 77. The case proceeded to trial, where a jury acquitted Ms. Hodges of the traffic and DUI charges. PSF ¶ 78a. The jury entered a guilty verdict on the concealing identity charge and could not reach a verdict on the resisting charge. *Id.* ¶ 78b. After trial, serious errors in the jury instructions were discovered, and the court granted Ms. Hodge's Motion for a New Trial. *Id.* 78c. On June 9, 2020, the District Attorney's Office dismissed the case and, consequently, Ms. Hodge has no convictions from this criminal case. *Id.* ¶ 78d. Moreover, due to the favorable turn of events, Ms. Hodge did not have an opportunity to appeal her case, which likely would have involved review of the adverse decision on her reasonable suspicion and probable cause motion. *Id.* ¶ 78e.[4]

## II. Procedural Background

Ms. Hodge filed the subject lawsuit in state court on October 20, 2020, with her Complaint for Damages for Injuries, Civil Rights Violations, and New Mexico Tort Claims Violations. Doc. 1-1. In Count I, Ms. Hodge alleges Deputy Bartram illegally seized her in violation of her Fourth

---

[4]     Defendants assert that PSF ¶ 78e is a legal conclusion. Doc. 46 at 12.

Amendment rights. *Id.* ¶¶ 56–62. In Count II, Ms. Hodge alleges Deputy Bartram used excessive force in violation of her Fourth Amendment rights. *Id.* ¶¶ 63–69. In Count III, Ms. Hodge alleges Deputy Bartram's action against her were motivated by her exercise of her right to "petition the government for redress of her grievances" in violation of her First Amendment rights. *Id.* ¶¶ 70–76. Count IV states a claim for negligent supervision against Sheriff Manuel Gonzales pursuant to the New Mexico Tort Claims Act ("NMTCA"). *Id.* ¶¶ 77–87. Count V states a claim for municipal liability under Section 1983 against Bernalillo County. *Id.* ¶¶ 88–94. Finally, Count VI states a claim against Deputy Bartram and Bernalillo County for battery and false arrest under the NMTCA. *Id.* ¶¶ 95–105.

## LEGAL STANDARD

### I.     Relevant Law on Summary Judgment

Federal Rule of Civil Procedure 56(c) requires that summary judgment be rendered "where no genuine issue of material facts exists, and the moving party is entitled to judgment as a matter of law." *Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 725 (10th Cir. 2006). The moving party bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation and marks omitted). Once this burden has been met, "the burden shifts to the nonmoving party to show that there is a genuine issue of material fact." *Id.* The Court will "examine the factual record and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1184 (10th Cir. 2010) (quoting *Clinger v. N.M. Highlands Univ. Bd. of Regents*, 215 F.3d 1162, 1165 (10th Cir. 2000)). Its function at this stage is "not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

## II.       Relevant Law on Qualified Immunity[5]

Qualified immunity shields state officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011) ("[Q]ualified immunity is an immunity from suit rather than a mere defense to liability.") (internal citation omitted). The doctrine "prevents undue interference with public affairs by cutting short baseless litigation against government actors." *Mecham v. Frazier*, 500 F.3d 1200, 1203 (10th Cir. 2007). Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The doctrine "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

"After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001). Accordingly, the plaintiff must meet the following two-part burden: "the first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation is established, the question whether the right was clearly established must be considered . . . ." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The *Saucier* procedure is no longer mandatory, and

---

[5]       Earlier this year, New Mexico passed the New Mexico Civil Rights Act, which prohibits state actors from enjoying the defense of qualified immunity on claims involving the deprivation of any rights, privileges or immunities secured by the bill of rights of the New Mexico Constitution. *See* N.M.S.A. § 41-4A-4. This statute applies only to allegations of violations of the state constitution and does not affect any claims brought pursuant to Section 1983 or otherwise alleging violations of the federal constitution.

courts may address either prong of the *Saucier* test first. *Pearson*, 555 U.S. at 236. If the plaintiff fails to satisfy either part of the heavy two-part burden, the Court must find that the defendant is protected by qualified immunity. *See Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

## DISCUSSION

I.  **The Court concludes that the doctrine of collateral estoppel is applicable to this case, and consequently it finds that Deputy Bartram's arrest of Ms. Hodge was supported by probable cause.**

Collateral estoppel is used to "bar the relitigation of ultimate facts or issues actually and necessarily decided in the prior suit by a valid and final judgment," and to prevent repeated litigation of the same issues under "the guise of different causes of action." *Reeves v. Wimberly*, 1988-NMCA-038, ¶ 6. The preclusive effect in federal court of a state judgment is governed by the state's preclusion rules. *Valley View Angus Ranch, Inc. v. Duke Energy Field Servs., Inc.*, 497 F.3d 1096, 1100 (10th Cir. 2007). In New Mexico, there are four elements the moving party must establish to demonstrate that the doctrine applies: "(1) the parties are the same or in privity with the parties in the original action; (2) the subject matter or cause of action in the two suits are different; (3) the ultimate facts or issues were actually litigated; and (4) the issue was necessarily determined." *Reeves*, 1988-NMCA-038, ¶ 8; *Shovelin v. Cent. New Mexico Elec. Co-op., Inc.*, 1993-NMSC-015, ¶ 10. In civil cases, New Mexico courts have "eliminated the traditional rule that the parties must be the same or in privity if the doctrine of collateral estoppel is to apply." *State v. Arevalo*, 2002-NMCA-062, 132 N.M. 306, 309 (citation omitted).

The movant bears the burden of establishing a prima facie showing. *Reeves*, 1988-NMCA-038, ¶ 15. "Once a prima facie showing is made, the burden shifts to the party opposing collateral estoppel to show that the party was not afforded a full and fair opportunity to litigate the issue in the prior proceeding." *Larsen v. Farmington Mun. Sch.*, 2010-NMCA-094, ¶ 9

(citation omitted). Collateral estoppel should be applied only where the trial judge determines that its application would not be fundamentally unfair. *Reeves*, 1988-NMCA-038, ¶ 14.

Here, Ms. Hodge was a party to *State v. Hodge*, T4-DW-2018-2156. *See* Doc. 22-3 (criminal complaint). Ms. Hodge was represented by the same two attorneys who represent her in the instant case. Having reviewed the Motion to Suppress for Lack of Reasonable Suspicion and Probable Cause filed in the state criminal matter, the Court notes that this pleading contains arguments substantially similar to those proffered by Ms. Hodge in the instant matter. *Compare* Doc. 36 (Response), *with* Doc. 22-4 (Motion to Suppress).  On May 20, 2019, the Honorable Christine E. Rodriguez of the Bernalillo County Metropolitan Court held a hearing on the Motion, at which Judge Rodriguez heard further oral arguments and the testimony of Deputy Bartram. *See* Doc. 22-5 (transcript of motion hearing). The state court ultimately found that reasonable suspicion existed for Deputy Bartram's stop of Ms. Hodges and that, based on the events that transpired, Deputy Bartram had probable cause to make an arrest. *Id.* at 3.

Ms. Hodge's sole argument against this Court's finding of collateral estoppel is her lack of ability to appeal this adverse finding due to her acquittal and dismissal of her remaining criminal charges. The Response brief acknowledges there is no New Mexico case law on this topic, and it argues that New Mexico courts would likely find that collateral estoppel could not be applied absent an ability to appeal. Ms. Hodge largely relies on *State v. Arevalo*, 2002-NMCA-062 to support her assertion. However, as Defendants point out, *Arevalo* involves an entirely different issue; it does not address whether an appeal is a necessary prerequisite to applying collateral estoppel. The Reply brief alerts the Court to a decision out of this District, *Vigil v. Tweed*, No. CV 18-829 SCY/JFR, 2020 WL 3250702 (D.N.M. June 16, 2020), cert. denied, No. CV 18-829

SCY/JFR, 2020 WL 4674163 (D.N.M. Aug. 12, 2020), *and appeal dismissed*, No. 20-2100, 2020

WL 8081935 (10th Cir. Aug. 27, 2020). The *Vigil* court noted that:

> [U]nlike Colorado, New Mexico has indicated that the opportunity to appeal is **not dispositive in the "full and fair" calculus.** In *Shovelin v. Central New Mexico Electric Co-op, Inc.,* the defendant argued that, because the other party had the opportunity to appeal the adverse decision, the court should be "particularly inclined" to apply collateral estoppel. 1993-NMSC-015, ¶ 18 n.5, 115 N.M. 293, 301 n.5. The court agreed that "whether a party availed himself of the opportunity to appeal an administrative decision is an important factor to consider when determining whether collateral estoppel is applicable," but disagreed with the premise that it was "particularly" important: instead, "**this is merely one factor that we must consider in the calculus of whether a party had the full and fair opportunity to litigate."** *Id.* Similarly, in *Rex, Inc. v. Manufactured Housing Committee of the State of New Mexico, Manufactured Housing Division*, the court found that arbitration proceedings should, in general, have preclusive effect. 1995-NMSC-023, ¶¶ 12-14, 119 N.M. 500, 504-05. In that case, the court found that the parties had a full and fair opportunity to litigate" during arbitration, but noted resolution of this issue may be context dependent. *Id.* ¶¶ 14, 29. The court did not address the right to appeal as being a factor but, in general, the right to appeal an arbitration is even more limited than the conditional right granted in § 39-3-3. *See K.R. Swerdfeger Constr. v. UNM Bd. of Regents*, 2006-NMCA-117, ¶ 13, 140 N.M. 374, 378, 142 P.3d 962, 966 ("there are strict limitations on judicial review of arbitration awards"). Therefore, while lack of a meaningful opportunity to appeal is a factor in New Mexico, it is not a dispositive factor. Thus, the Court finds that New Mexico has rejected Plaintiff's position that the lack of an appeal right conclusively means collateral estoppel is unfair.

*Id.* at *13 (emphasis added). The Court adopts the reasoning of its sister-court in *Vigil* and makes

the same finding: New Mexico has rejected Ms. Hodge's argument that the lack of an appeal right

precludes application of the collateral estoppel doctrine. This is in contrast to *Dixon v. Richer*, 922

F.2d 1456 (10th Cir. 1991), a case cited to by Plaintiff that deals with Colorado's preclusion rules.

Further, the record shows that Ms. Hodge had a full and fair opportunity to litigate the issue of

whether Deputy Bartram had reasonable suspicion and probable cause. Ms. Hodge was represented

by counsel, who filed a motion containing arguments substantially similar to those presently before

the Court. *Compare* Doc. 22-4 (Motion to Suppress), *with* Doc. 36 (Response). The Metropolitan

Court addressed Ms. Hodge's arguments at the May 20, 2019 hearing. *See* Doc. 22-5 (transcript of motion hearing). Finally, Ms. Hodge does not allege that any unfairness or deprivation of justice occurred in her state case. Under these circumstances, the Court concludes that the state court's determination that Deputy Bartram had reasonable suspicion and probable cause bars Ms. Hodge from rearguing these issues in the instant case. Accordingly, this Court finds that Deputy Bartram's arrest of Ms. Hodge was supported by probable cause.

## II.       Federal Constitutional Claims Against Deputy Bartram

### A.  *Deputy Bartram is entitled to qualified immunity on Ms. Hodge's First Amendment Claim.*

Ms. Hodge's First Amendment Claim rests on two separate factual bases: her arrest and Deputy Bartram's use of force against her. Generally, a plaintiff must establish three elements in a claim based upon First Amendment retaliation: (1) that [she] was engaged in constitutionally protected activity; (2) that the defendant['s] actions caused [her] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant['s] adverse action was substantially motivated as a response to [her] exercise of constitutionally protected conduct. *Hinkle v. Beckham Cty. Bd. of Cty. Comm'rs*, 962 F.3d 1204, 1226 (10th Cir. 2020) (quoting *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)). Ms. Hodge argues that Deputy Bartram's arrest and use of force was retaliation against her exercising her First Amendment right to question and criticize Deputy Bartram's conduct and express her concerns and grievances to a 911 dispatcher.

In addressing the retaliatory arrest claim, the Court notes that ["i]n addition to the three *Worrell* elements, a First Amendment retaliation claim based on a false arrest requires a separate "threshold showing"—generally, a plaintiff must show a false arrest. *Hinkle*, 962 F.3d at 1227 (citing *Nieves v. Bartlett*, 139 S. Ct. 1715, 1728 (2019)). In *Nieves*, the United States Supreme

Court held "[t]he presence of probable cause should generally defeat a First Amendment retaliatory arrest claim."[6] 139 S. Ct. at 1726. Accordingly, the United States Supreme Court and the Tenth Circuit have both routinely held the presence of probable cause defeats a First Amendment retaliatory arrest claim. *See id*. at 1728 ("Because there was probable cause to arrest [the plaintiff], his retaliatory arrest claim fails as a matter of law."); *Fenn v. City of Truth or Consequences*, 983 F.3d 1143, 1149 (10th Cir. 2020) ("The presence of probable cause, therefore, is a bar to a First Amendment retaliation claim, and Fenn has not shown a lack of probable cause here."); *Hinkle*, 962 F.3d at 1227 ("We have already concluded that Deputy Estep had probable cause to arrest Hinkle. So, under *Nieves*, Hinkle's retaliatory-arrest claim must fail."). Here, the Court has already found that Deputy Bartram had probable cause to arrest Ms. Hodge, and the Response brief offers no authority to rebut the Motion's demonstration that an arrest supported by probable cause generally cannot violate the arrestee's First Amendment rights. Consequently, under these circumstances, Deputy Bartram did not violate Ms. Hodge's First Amendment rights by arresting her.

Ms. Hodge's claim of retaliatory use of force necessitates a more in-depth examination of the *Worrell* elements. Upon review of the record, the Court finds that Ms. Hodge has failed to establish the first element because she was not engaged in a constitutionally protected activity.

Plaintiff's counsel alerts the Court to cases in which individuals were prosecuted for their verbal objections and challenges to law enforcement officers. *See City of Houston, Tex. v. Hill*, 482 U.S. 451 (1987) (applying First Amendment overbreadth analysis and invalidating municipal

---

[6]     The *Nieves* Court also acknowledged that a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so (the Court uses jaywalking as an example). *Nieves*, 139 S. Ct. at 1727. The Court further concluded that the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that she was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been. *Id.* In the instant case, the record shows that Ms. Hodge's arrest does not fall into either category.

ordinance that allowed man to be prosecuted for shouting "why don't you pick on somebody your own size" at police officer); *United States v. McKinney*, 9 Fed. Appx. 887 (10th Cir. 2001) (finding that a woman's refusal to identify herself and her instances that the officer should "go f\* \* \* [him]self" did not amount to fighting words criminalized by the Kansas penal code) (alteration in original). Here, the Court is not dealing with an instance of speech criminalization. Rather, the record reveals that Deputy Bartram made a lawful stop of Ms. Hodge's vehicle. Deputy Bartram was wearing a BCSO uniform and identified himself as being an officer with BCSO. During the course of the stop, Deputy Bartram instructed Ms. Hodge to show him her driver's license, to which she responded, "You do know it's illegal to demand something." Ms. Hodge then asked Deputy Bartram for an explanation for why he stopped her vehicle, to which Deputy Bartram responded, "When you pulled onto Eubank, you didn't come to a complete stop and then as you were driving on Eubank. . . you failed to maintain your lane of traffic." At this point, Ms. Hodge accuses Deputy Bartram of lying (here, the Court notes the state court's finding that Deputy Bartram had reasonable suspicion supporting the stop). Deputy Bartram again asked for Ms. Hodge's driver's license, and instead of complying with his request, she stated "No you can't and I'm calling 911." She then proceeded to speak on the phone with a 911 dispatcher, telling the dispatcher "there's an officer that is being hostile with me." Doc. 36-6. Ms. Hodge told the dispatcher that Deputy Bartram was forcing her to open her door. *Id.* She then asked the dispatcher, "do you hear him, or should I videotape him?" (referring to Deputy Bartram). *Id.* Ms. Hodge finished the call by informing the dispatcher, "he's flashing his bright light in my eyes" before the call unexpectedly terminated. *Id.* Instead of directing her attention to Deputy Bartram and the ongoing, lawful traffic stop, Ms. Hodge again called 911. Ms. Hodge's second call was made at the same time Deputy Hodge was pulling her out of the vehicle. On the recording of the second

call, Ms. Hodge tells the 911 dispatcher, "there's an officer getting violent with me" and "he's hurting my arm." When viewed in a vacuum, the 911 calls could very well indicate that Ms. Hodge was engaging in a constitutionally protected activity such as objecting to law enforcement conduct or petitioning the government. However, the evidence in this case shows the Court the whole picture. Specifically, the video and audio recordings reveal a situation in which Ms. Hodge uses her verbal conduct to hinder a lawful traffic stop. Thus, the Court concludes that no reasonable juror could find that Ms. Hodge was engaged in constitutionally protected activity with regards to her verbal complaints to Deputy Bartram and the 911 dispatchers. Had Ms. Hodge simply complied with Deputy Bartram's lawful request to see her driver's license, this lawsuit may have been averted.   Accordingly, Ms. Hodge's First Amendment claim fails because there was no constitutional violation.

B.  *Deputy Bartram is entitled to qualified immunity on Ms. Hodge's Fourth Amendment Illegal Seizure Claim.*

"A police officer violates an arrestee's clearly established Fourth Amendment right to be free of unreasonable seizure if the officer makes a warrantless arrest without probable cause." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). Ms. Hodge does not challenge or otherwise respond to the Defendants' assertion that her Fourth Amendment illegal seizure claim cannot survive absent probable cause. Given the Court's prior finding of probable cause for Ms. Hodge's arrest, the Court further finds that no constitutional violation occurred and Deputy Bartram is, thus, entitled to qualified immunity on this claim.

C.  *Deputy Bartram is not entitled to qualified immunity on Ms. Hodge's Fourth Amendment Excessive Force Claim.*

The United States Supreme Court has instructed that claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other

"seizure" of a free citizen should be analyzed under the Fourth Amendment and its objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Specifically, the question the Court considers in excessive force cases is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. Reasonableness is evaluated under a totality of the circumstances approach, which requires that the Court consider and balance the following factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The Court analyzes the question of reasonableness from the perspective "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Plumhoff v. Rickard*, 572 U.S. 765, 775 (2014). Thus, the Court allows "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.*

The Defendants ask the Court to consider *Mecham v. Frazier*, 500 F.3d 1200 (10th Cir. 2007), which they claim is sufficiently analogous to the facts presented in this case. In *Mecham*, a defendant officer pulled the plaintiff over for going five miles over the speed limit and not wearing a seatbelt. *Id.* at 1202. The plaintiff provided the officer with an expired driver's license. During the traffic stop, the plaintiff received a call on her cell phone, which she answered. *Id.* The officer told the plaintiff to put her cell phone down so that he could explain her citation, but she ignored the officer and continued talking. *Id.* Accordingly, the officer explained to the plaintiff that she could not drive with an expired license and that her car would be towed. *Id.* The tow truck arrived fifteen minutes later, at which point the officer ordered the plaintiff to get out of her car. *Id.* at

1203. After she failed to comply, the officer stated that if she did not voluntarily step out of the vehicle, he would have to physically remove her. Id. When she again refused, the officer sprayed the plaintiff in the face with pepper spray, opened her driver's side door, and physically removed her from the car. *Id.* He, along with other officers who had arrived at the scene, pulled the plaintiff to the ground and handcuffed her. *Id.*

In *Carabajal v. City of Cheyanne, Wyo.*, 847 F.3d 1203 (10th Cir. 2017), a case in which an officer was granted qualified immunity after he physically removed an injured driver from a vehicle where the driver had been non-compliant with the officer's commands, the Tenth Circuit cited to *Mecham*'s finding that it was a "foregone conclusion" that arresting a non-compliant driver would require force. *Id.* at 1212. Defendants further cite to other excessive force claims from the Tenth Circuit in which courts found that officers using physical force to control non-compliant individuals suspected of minor, non-violent crimes was objectively reasonable. *See Simpson v. Kansas*, 593 F. App'x 790 (10th Cir. 2014) (officer removed woman from vehicle, "firmly" guiding her to the ground and placing his knee on her back after she became non-cooperative during a traffic stop for a seat belt violation); *Yadon v. Hilton*, 516 F. App'x 694 (10th Cir. 2013) (physical force was appropriate when a misdemeanor suspect became non-compliant*); Valencia v. De Luca*, No. 13 CV 930 JAP/WPL, 2014 WL 11430951 (D.N.M. Aug. 26, 2014), *aff'd*, 612 F. App'x 512 (10th Cir. 2015) (physically removing an individual from a car on a traffic stop was appropriate "even though the arrest occurred in a parking lot not on a busy highway shoulder").

Plaintiff's Response brief convincingly distinguishes these cases. It notes that in *Mecham* force was used only after a nearly hour-long traffic stop and after repeated instructions to exit the vehicle or face arrest. Under these circumstances, the *Mecham* plaintiff's claim that she doubted the officer's identity and motives was deemed implausible because she had ample time and

evidence, including the arrival of a tow truck and additional officers and marked squad cars, to conclude that this was a legitimate traffic stop. In contrast, Deputy Bartram resorted to a substantial use of physical force within minutes of stopping Ms. Hodge. The undisputed facts show that Deputy Bartram called for backup before he pulled Ms. Hodge from the vehicle but failed to wait for the additional officer(s) to arrive at the scene. Nothing in the record indicates that Ms. Hodge conducted herself in a manner that would warrant Deputy Bartram forcefully removing her from the vehicle before his requested backup arrived. Additionally, Ms. Hodge was not warned that she would be placed under arrest, distinguishing this case from *Mecham* and *Simpson*, and she did not attempt to drive off or otherwise flee the scene, in contrast to the situations presented by *Carabajal* and *Yandon*. The *Valencia* case is also appreciably distinguished because Mr. Valencia grabbed the steering wheel and struggled with the two officers *for two minutes* after an already lengthy traffic stop. 612 Fed.Appx. at 515. The Court also notes that the district court and appellate opinions' descriptions of the incident do not indicate that Mr. Valencia was ever pulled to the ground. In fact, it is very clear that Mr. Valencia, unlike Ms. Hodge, failed to provide evidence of the nature or extent of any injuries resulting from the force used against him. *Id.* at 519 n.7.

With these cases and distinguishing factors in mind, the Court will now turn to examining the *Graham* factors as they apply to the instant case. As for the first factor, severity of the crimes at issue, the Court is unable to weigh this factor in favor of either party at this stage.  Ms. Hodge was suspected of having committed traffic violations and being under the influence of alcohol. The Court notes the seriousness of driving under the influence and the dangers generated by this offense. However, despite the seriousness of these accusations, the Court is unable to make a finding that Defendants have conclusively established that Ms. Hodge showed definite signs of intoxication during the stop. The Response brief provides evidence, in the form of photographs

taken at the scene, that Ms. Hodge did not present watery bloodshot eyes, as claimed by Deputy Bartram. *See* Doc. 36-3. The Court notes that the fact that Ms. Hodge's voice always sounds slurred, *compare* Doc. 22 Exs. B & E, *with* Doc. 22 Ex. C, does not create an actual dispute as to whether her voice sounded slurred on the night in question. Finally, the charges ultimately brought against Ms. Hodge were all misdemeanors.

The second and most important *Graham* factor, whether the suspect poses an immediate threat to the safety of the officers or others, weighs in favor of Ms. Hodge because the evidence clearly shows that she did not pose an immediate threat to the safety of Deputy Bartram or others. *See Pauly v. White*, 874 F.3d 1197, 1216 (10th Cir. 2017) ("The second *Graham* factor . . . is undoubtedly the most important and fact intensive factor in determining the objective reasonableness of an officer's use of force."). The traffic stop occurred in a nearly empty parking lot. Deputy Bartram had turned off Ms. Hodge's vehicle and taken her keys. He also checked the vehicle for weapons and found none. While uncooperative and, at times, very uncivil, there is no indication that Ms. Hodge ever attempted to flee or made gestures, movements, or statements indicating that she would be a source of immediate danger.

Finally, the third factor also weighs in Ms. Hodge's favor.  As mentioned above, Ms. Hodge did not attempt to flee during this encounter. Moreover, Ms. Hodge's actions in holding the steering wheel and leaning back from Deputy Bartram's grip were extremely brief, a far cry from the two-minute struggle that occurred in *Valencia.* Overall, the record shows Ms. Hodge merely being defiant and obstructing the traffic stop in a manner that, looking at the evidence in the light most favorable to Ms. Hodge, would not justify the level of force Deputy Bartram ultimately used. *See McGarry v. Bd. of County Commissioners for County of Lincoln*, 294 F.Supp.3d 1170, 1197

(D.N.M. 2018) ("A throw down for mere defiance would be inappropriate but forcing the suspect to the ground would be appropriate if that suspect struggled physically against the officer.").

With two out of three of the *Graham* factors conclusively weighing in favor of Ms. Hodge, the Court concludes that a reasonable juror could find that Deputy Bartram used excessive force in violation of Ms. Hodge's Fourth Amendment rights. *See Casey v. City of Fed. Heights*, 509 F.3d 1278, 1285 (10th Cir. 2007) (holding that "force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest"). Now the Court must determine whether Ms. Hodge has met her burden of showing clearly established law on this point.

The Response brief cites to Tenth Circuit cases to support Ms. Hodge's argument that the law clearly establishes that using disproportionate physical force is not necessary when the offense is minor, the suspect does not pose a threat to the officer's safety, and the suspect does not attempt to flee. *See Davis v. Clifford*, 825 F.3d 1131, 1137 (10th Cir. 2016) (finding that the law was clearly established that "the use of disproportionate force to arrest an individual who has not committed a serious crime and who poses no threat to herself or others constitutes excessive force[]"); *see also Buck v. City of Albuquerque*, 549 F.3d 1269, 1291 (10th Cir. 2008). In essence, Ms. Hodge's argument is that in instances where the use of force was found to be unjustified under the *Graham* reasonableness test the use of force automatically violate clearly established law. *See Morris v. Noe*, 672 F.3d 1185, 1197–98 (10th Cir. 2012) (holding that officer was not entitled to qualified immunity because law was clearly established that the force used against Morris was unjustified because two *Graham* factors weighed in Morris' favor); *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) ("Considering that under Fogarty's version of events each of the *Graham* factors lines up in his favor, this case is not so close that our precedents would fail to portend the constitutional unreasonableness of defendants' alleged actions."); *Casey*, 509 F.3d at

1285 (10th Cir. 2007) (holding that the law was clearly established such that a reasonable officer would understand that using extreme physical force like tackling and beating without warning on a peaceful individual would violate that individual's constitutional rights because "*Graham* establishes that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest").

In their Reply brief, Defendants call into question the continuing validity of these cases by pointing to United States Supreme Court decisions that seem to explicitly reject Ms. Hodge's attempt to rely on the *Graham* factors for her argument that the law was clearly established. In *White v. Pauly*, the Supreme Court, sitting in review of a Tenth Circuit decision, stated that "we have held that *Garner* and *Graham* do not by themselves create clearly established law **outside 'an obvious case.'**" 137 S. Ct. 548, 552 (2017) (internal citation omitted) (emphasis added). In *Brosseau v. Haugen*, the Court held that *Garner* and *Graham*, which are "cast at a high level of generality," did not clearly establish that the officer's decision was unreasonable. 543 U.S. 194, 199 (2004) (per curiam). Defendants raise a good point, but their Supreme Court decisions are not as unequivocal in position as the Reply brief argues. The *White* opinion states:

> Qualified immunity attaches when an official's conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S., at ―― – ――, 136 S.Ct., at 308. While this Court's case law "'**do[es] not require a case directly on point**'" for a right to be clearly established, "'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id*., at ――, 136 S.Ct., at 308. In other words, immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'" *Ibid.*

137 S. Ct. at 551 (emphasis added). As noted above, the *White* opinion holds that the *Graham* factors do not generate clearly established law "outside 'an obvious case'" *Id.* at 552 (quoting *Brosseau*, 543 U.S. at 199). Clearly, the door has been left open for certain cases to still warrant denial of qualified immunity based on *Graham*. In fact, *White* presented "a unique set of facts and

circumstances" that convinced the Court that it was "not a case where it is obvious that there was a violation of clearly established law under *Garner* and *Graham*." *Id.*

The underlying facts and circumstances of the instant case lead the Court to conclude that Ms. Hodge's claim presents an "obvious case" of excessive force in violation of the Fourth Amendment as established under *Graham.* Here, Deputy Bartram resorted to the use of substantial physical force within minutes of stopping Ms. Hodge. He did not wait for his requested backup and there is no indication that Ms. Hodge posed a threat or flight risk. Stated another way, the undisputed facts in this case demonstrate a "run-of-the-mill Fourth Amendment violation" contemplated by, but not present in, the *White* case. *See White,* 137 S.Ct. at 552. Accordingly, Ms. Hodge has met her burden for making a particularized showing that the law was clearly established at the time of Deputy Bartram's violation. Accordingly, the Court denies Deputy Bartram's assertion that he is entitled to qualified immunity on this claim.

### III.  Municipal Liability § 1983 Claim

Ms. Hodge asserts a claim against Bernalillo County for municipal liability based upon Deputy Bartram's conduct. The core of a municipal liability claim is that "a municipal policy or custom was the moving force behind the constitutional deprivation that occurred." *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1264 (10th Cir. 2008). "A challenged practice may be deemed an official policy or custom for § 1983 municipal liability purposes if it is a formally-promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training and supervision." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013). Ms. Hodge has asserted disputed facts in this case that could subject the County to liability based on its training and supervision of Deputy Bartram as well as its written and de facto policies on use of force. *See* Doc. 36 at 23–25.

Defendants' sole defense consists of an assertion that there is no underlying constitutional violation. *See* Doc. 22 at 27–28. The Court has ruled that the Fourth Amendment excessive force claim, and the underlying constitutional violation, is an issue that must go to the jury. Accordingly, Ms. Hodge's municipal liability claim based on Deputy Bartram's use of excessive force will also go to the jury.

### IV.   NMTCA Claims Against Deputy Bartram[7]

*A. Ms. Hodge cannot assert a viable NMTCA Wrongful Arrest Claim because Deputy Bartram had probable cause.*

As the New Mexico Court of Appeals stated in *Rodriguez v. Smith*, "it was proper for the district court to apply collateral estoppel to preclude the litigation of Plaintiff's false arrest and false imprisonment claims, since those claims can be defeated by a probable cause determination in Defendant's favor, and since the probable cause issue was actually litigated and necessarily determined in the prior proceeding." No. A-1-CA-36749, 2019 WL 4419979, at *6 (N.M. Ct. App. Aug. 15, 2019) (unpublished). New Mexico courts have repeatedly held that probable cause is fatal to false arrest and false imprisonment claims. *See Dickson v. City of Clovis*, 2010-NMCA-058, ¶ 21 (noting the plaintiff's false arrest and false imprisonment claims were properly dismissed based upon a finding of probable cause); *Benavidez v. Shutiva*, 2015-NMCA-065, ¶ 12 ("Probable cause to arrest for a single charge will suffice to immunize Defendants from Plaintiff's wrongful arrest claims."); *Santillo v. N.M. Dep't of Pub. Safety*, 2007–NMCA–159, ¶ 12 ("An officer who has probable cause to arrest a person cannot be held liable for false arrest or imprisonment, since probable cause provides him with the necessary authority to carry out the arrest."). Defendants

---

[7] The Complaint alleges that Deputy Bartram "engaged in acts and omissions which resulted in the commission of the torts of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights, or deprivations of rights, privileges, or immunities secured by the constitution and laws of the United States and New Mexico." Doc. 1-1 ¶ 99 (citing N.M.S.A § 41-4-12). For the purposes of ruling on Defendants' motion for summary judgment the issue is narrowed to examining the torts of false arrest/imprisonment and battery. *See* Doc. 22 at 28–30.

have met their burden of proving probable cause, and, accordingly, Ms. Hodge's false arrest and false imprisonment tort claims against Deputy Bartram must be dismissed.

  B. *Ms. Hodge's NMTCA Battery Claim against Deputy Bartram will proceed forward.*

In New Mexico, law enforcement officers are permitted a privilege to use force, and will not be civilly liable, as long as the officer acts with a reasonable belief that the amount of force used is necessary under the circumstances. *See Beldsoe v. Garcia*, 742 F.2d 1237, 1240 (10th Cir. 1984) (citing Restatement (Second) of Torts § 132)); *see also Mead v. O'Connor*, 1959-NMSC-077, ¶4. The standard is substantially the same as that found in *Graham*—the Court is to apply an objective reasonableness test, using the perspective of an officer at the scene, with the understanding that officers must often make split-second decisions in difficult situations about what force is necessary. *See State v. Mantelli*, 2002-NMCA-033, ¶¶ 28-29, 131 N.M. 692; *see also Alaniz v. Funk*, 69 N.M. 164, 168, 364 P.2d 1033, 1035–36 (1961) (applying, in excessive force case brought against a police officer, an objective reasonableness test that is similar to the test in *Graham v. Connor*). Defendants argue that, because Deputy Bartram used an objectively reasonable amount of force, he cannot be held liable for battery under the NMTCA.

Of course, Defendants' argument fails in light of the Court's ruling, under the parallel federal standard, that the issue of whether Deputy Bartram used reasonable force must be left to a jury. Accordingly, the battery claim against Deputy Bartram will proceed.

  **V.   NMTCA Supervisory Claims**

  A. *The NMTCA Supervisory Claims based on wrongful arrest fail as a matter of law.*

"[W]hen subordinate officers have committed one of certain specified torts, the Tort Claims Act does not provide immunity to supervisory law enforcement officers whose negligent training or supervision of the subordinates was a proximate cause of the tort." *McDermitt v. Corr.*

*Corp. of Am.*, 1991-NMCA-034, ¶ 1. However, New Mexico courts "emphasize[] that the negligence complained of must cause a specified tort []; immunity is not waived for negligence standing alone." *Caillouette v. Hercules, Inc.*, 1992-NMCA-008, ¶18. Stated another way, supervisory liability for an officer's conduct must be based on the officer actually committing a specific tort. The Court's finding that Deputy Bartram did not falsely arrest or imprison Ms. Hodge precludes any supervisory claim based on these allegations from proceeding.

> *B. The NMTCA Supervisory Claims based on battery will proceed forward.*

In contrast, the jury will decide whether Deputy Bartram battered Ms. Hodge. Accordingly, the supervisory claims based on this conduct will likewise proceed.

## CONCLUSION

**Therefore,** for the reasons stated in this Memorandum Opinion and Order, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment based on Qualified Immunity. The following claims are dismissed:

- First Cause of Action: Claim against Defendant Bartram under 42 U.S.C. § 1983 (Unlawful Seizure) and
- Third Cause of Action: Claim against Defendant Bartram under 42 U.S.C. § 1983 (First Amendment Violations).

**Furthermore**, Ms. Hodge's Fourth Cause of Action fails as a matter of law to the extent it is based upon allegations of false arrest/imprisonment; her Fifth Cause of Action fails as a matter of law to the extent it is based upon allegations related to First Amendment or Fourth Amendment unlawful seizure violations; and her Sixth Cause of Action fails as a matter of law to the extent it is based upon allegations of false arrest/imprisonment.

Finally, as for the remaining claims not dismissed by the Court, they survive Defendant's Motion for Summary Judgement based on Qualified Immunity and shall proceed to trial by jury.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE